UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYDE HOLLIS HARRIS, | No. 2:17-cv-0680 KJN P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| S. FERNAN, et al., | |
| Defendants. | |

I. Introduction

    Plaintiff is a 51 year old state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. The state prison's inmate locator reflects that plaintiff remains housed at the California State Prison in Solano ("CSP-SOL"). On March 30, 2017, plaintiff filed a complaint and a motion for injunctive relief. On April 5, 2017, Supervising Deputy Attorney General Monica Anderson was directed to file a response to plaintiff's motion for injunctive relief. On April 12, 2017, by special appearance, Supervising Deputy Attorney General Kelli M. Hammond filed a response, accompanied by a declaration from Dr. M. Kuersten, Chief Medical Executive at CSP-SOL. On May 30, 2017, plaintiff filed a reply.

    On August 15, 2017, plaintiff renewed his motion for injunctive relief, providing additional medical information.

////

1

1    As set forth below, the undersigned recommends that plaintiff's motions for injunctive
2    relief be denied without prejudice.

## II. Legal Standards

A temporary restraining order is an extraordinary and temporary "fix" that the court may issue without notice to the adverse party if, in an affidavit or verified complaint, the movant "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." See Fed. R. Civ. P. 65(b)(1)(A). The purpose of a temporary restraining order is to preserve the status quo pending a fuller hearing. See generally, Fed. R. Civ. P. 65; see also L. R. 231(a). It is the practice of this district to construe a motion for temporary restraining order as a motion for preliminary injunction. Local Rule 231(a); see also, e.g., Aiello v. One West Bank, 2010 WL 406092, *1 (E.D. Cal. 2010) (providing that "'[t]emporary restraining orders are governed by the same standard applicable to preliminary injunctions'") (citations omitted).

The party "'seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Glossip v. Gross, 135 S. Ct. 2726, 2736-37 (2015) (quoting Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008)). "Under Winter, plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). The Ninth Circuit has held that, even if the moving party cannot show a likelihood of success on the merits, injunctive relief may issue if "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation omitted). Under either formulation of the principles, preliminary injunctive relief should be denied if the probability of success on the merits is low. See Johnson v. California State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995) ("'[E]ven if the balance of hardships tips decidedly in favor of the moving party, it must be

shown as an irreducible minimum that there is a fair chance of success on the merits.'" (quoting Martin v. Int'l Olympic Comm., 740 F.2d 670, 675 (9th Cir. 1984)).

In addition, as a general rule this court is unable to issue an order against individuals who are not parties to a suit pending before it. Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100 (1969). A federal district court may issue emergency injunctive relief only if it has personal jurisdiction over the parties and subject matter jurisdiction over the lawsuit. See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999) (noting that one "becomes a party officially, and is required to take action in that capacity, only upon service of summons or other authority-asserting measure stating the time within which the party served must appear to defend."). The court may not attempt to determine the rights of persons not before it. See, e.g., Zepeda v. INS, 753 F.2d 719, 727-28 (9th Cir. 1983); see also Califano v. Yamasaki, 442 U.S. 682, 702 (1979) (injunctive relief must be "narrowly tailored to give only the relief to which plaintiffs are entitled"). Under Federal Rule of Civil Procedure 65(d)(2), an injunction binds only "the parties to the action," their "officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation." Fed. R. Civ. P. 65(d)(2)(A) - (C).

Finally, the Prison Litigation Reform Act ("PLRA") further requires prisoners to satisfy additional requirements when seeking preliminary injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Section 3626(a)(2) places significant limits upon a court's power to grant preliminary injunctive relief to inmates, and "operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators -- no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." Gilmore v. People of the State of California, 220 F.3d 987, 998-99 (9th Cir. 2000).

III. Plaintiff's Motion for Injunctive Relief

In his motion for injunctive relief, plaintiff alleges the following:

In January 2014 plaintiff was transferred to CSP-SOL as a "high risk medical transfer," referred to plaintiff's medical problems, rather than custody status. (ECF No. 3 at 16.) Plaintiff suffers from achalasia[1] and a hiatal hernia.[2] As a result of these conditions, plaintiff has difficulty having even liquid bowel movements, and suffers pain in the left side of his torso, neck and head.

After two years of filing grievances, plaintiff was referred to Dr. Chamber, a surgeon. Dr. Chamber told plaintiff that he required thoracic surgery, and referred plaintiff to a thoracic surgeon in January 2016.

Before plaintiff received the consultation with the thoracic surgeon, plaintiff was transferred to the La Palma Correctional Facility in Arizona in June 2016. At the time of transfer, plaintiff's medical status had been lowered to medium risk, making him eligible for out of state transfer to Arizona. (Id. at 16-17.)

After his transfer to Arizona, plaintiff went to the medical department about his achalasia and hiatal hernia. (Id. at 16.) Plaintiff was sent to gastroenterologist Dr. Kazi, who told plaintiff that he would require tests and a colonoscopy to rule out anything else before going forward with thoracic surgery. After plaintiff returned to the La Palma Correctional Facility following his consultation with Dr. Kazi, the prison doctor, Dr. Crane, told plaintiff that he was going to have to be sent back to California on a high risk medical return. Dr. Crane told plaintiff that the Arizona prison would continue to do the work up for the surgery because it would take a while for the transfer back to California. (Id. at 17.) However, plaintiff would have to wait for the colonoscopy until he returned to California.

////

---

[1] Achalasia is the "failure to relax; referring especially to visceral openings such as the pylorus, cardia, or any other sphincter muscle." Stedmans Medical Dictionary 5880 (2014).

[2] Hiatal or hiatus hernia is a "hernia of a part of the stomach through the esophageal hiatus of the diaphragm; classified as sliding (esophagogastric junction above the diaphragm) or paraesophageal (esophagogastric junction below the diaphragm)." Stedmans Medical Dictionary 405430 (2014).

In October 2016, plaintiff was transferred back to CSP-SOL. Plaintiff attempted to have his medical issues addressed, but he was transferred to Old Folsom State Prison on November 6, 2016. At Old Folsom State Prison, plaintiff was told that CSP-SOL had put him back at medium risk, but that he would be sent back to CSP-SOL due to a pre-surgery diet that was not available at Old Folsom State Prison. Plaintiff returned to CSP-SOL on November 29, 2016.[3] Plaintiff was approved for a gastroenterologist visit in the first week of March 2017. However, as of March 20, 2017, plaintiff was not yet scheduled to see the gastroenterologist.

On March 21, 2017, plaintiff's counselor informed plaintiff that he was being transferred out of state again because he was only medium risk. Plaintiff believes that medical and custody departments are playing games and transferring him around so that he cannot get his medical issues addressed. Plaintiff states that "they" have given him "tons of laxatives" but his guts hardly work anymore, and he does not think his guts will take another trip out of state and back. (Id.) Plaintiff also believes prison officials are retaliating against him for filing administrative grievances by giving him "bus therapy." (Id. at 18.)

Plaintiff requests that the court intervene and order prison officials not to transfer him so that his medical issues can be addressed. (Id.)

IV. Response by Special Appearance

On April 12, 2017, the Office of the Attorney General, by special appearance, filed a response to the court's order. (ECF No. 10.) Dr. Kuersten reviewed plaintiff's medical records and states that plaintiff's "transfers appear to be related to his circumstances surrounding his medical complaints, but are unrelated to [plaintiff's] medical risk status." (ECF No. 10-2 at 2.) Dr. Kuersten states that review of plaintiff's medical records revealed no changes to plaintiff's medical risk level, and he remains at the medium risk level due to the diagnosis of achalasia.

Dr. Kuersten reviewed plaintiff's medical records and notes plaintiff "has undergone multiple medical work-ups, none of which identified a condition that requires medically necessary surgery;" and therefore, plaintiff's medical care can be provided at any institution

---

[3] In the motion, plaintiff inadvertently states that he returned to CSP-SOL on November 29, 2017. (Id.)

5

designated for medical care of medium risk inmates. (Id.) Plaintiff was awaiting an appointment with an outside gastroenterologist, which is in the process of being scheduled. Dr. Kuersten states that plaintiff "exercises and plays sports, eats a regular diet, and has maintained his weight." (Id.) Dr. Kuersten also states that information obtained on April 10, 2017, from the Classification and Parole Representative Office, reflects that "there is currently no indication that [plaintiff] is pending transfer away from CSP-Solano." (ECF No. 10-1 at 3.)

V. Plaintiff's Reply

Plaintiff contends that the doctor failed to review older medical records that demonstrate plaintiff's risk level was first changed while he was housed at Calipatria. Plaintiff argues that prison officials are manipulating their bookkeeping to keep the court in the dark as to population numbers and as to the level of care inmates are receiving. Plaintiff claims he has evidence of the fluctuations in his own assessments that vary in a capricious fashion, causing him anxiety. Plaintiff appears to contend that his treatment has been further delayed by ordering further consultations.[4]

Plaintiff claims he needs a colonoscopy before they can perform thoracic surgery, but that the last time a colonoscopy was performed, he almost died, although he also states that prison officials insist that there is no information in his medical file confirming this happened. He was recently told he would be going out for a procedure, but then was ducated to the onsite institutional hospital. Plaintiff claims that on May 18, 2017, he had to demand he be seen on an emergency basis, apparently to stop the impending "purgatives" for the colonoscopy which he claims would again imperil his life. (ECF No. 12 at 2-3, 5-6.)[5] Plaintiff argues that the CDCR

////

////

---

[4] Plaintiff also states that he believes the transfer of any prisoner with a matter pending in federal court must be cleared by the court before such transfer. However, plaintiff is mistaken.

[5] Plaintiff also complains that there was no mention of the torn ligament in his foot, or any mention of broken bones in his foot which he claims never healed. (ECF No. 12 at 3.) In addition, plaintiff attacks prison medical care in general, and contends that prisons remain overpopulated.

6

does not want to spend money for the surgery necessary to address plaintiff's serious medical issues.[6]

In response to Dr. Kuersten's declaration that plaintiff is being provided medically necessary treatment, plaintiff concedes "this is a partially true statement," but claims he is not being provided with all medically necessary treatment, and that medical staff only recently began to be more attentive to his case. (ECF No. 12 at 7.) Plaintiff concedes that medical risk levels are assigned in Sacramento, but argues that the data the risk level is based on can be, and was, manipulated in his case. Plaintiff claims he does have a verifiable need for surgery, and that his functional level is not good, despite Dr. Kuersten's declaration.

VI.  Plaintiff's Clarification

On August 15, 2017, plaintiff submitted a declaration in support of his motion for injunctive relief. Because there has been a "slight change in circumstances," clarification of the facts is required. (ECF No. 13 at 2.) Plaintiff now has documents substantiating his medical condition and demonstrating how he is not receiving the recommended surgery. Plaintiff needs recommended surgery, but due to multiple transfers, his medical care starts over from scratch, his medical treatment has been delayed for years, and his medical records are intentionally poorly kept. (ECF No. 13 at 3.) Recently, plaintiff was again classified as "high risk medical," but "they" are making every effort to disguise the degree of need for assistance from the courts. (ECF No. 13 at 4.) Plaintiff's intestines are choking off other parts such that it affects his eating, digestion, and hygiene, which is often "extremely painful." (ECF No. 13 at 4.) Plaintiff needs surgery to prevent a bowel obstruction from recurring, which almost killed him at a different institution. (ECF No. 13 at 4.) Plaintiff reiterates that medical staff claim that medical records from this incident do not exist. Because of this, plaintiff continues to be threatened with another transfer and more delays in treatment.

////

---

[6] He also discusses a criminal case he has pending in San Joaquin County. (ECF No. 12 at 6.) Plaintiff asks the court to take judicial notice of his pending criminal matters. (ECF No. 12 at 7.) Plaintiff's request for judicial notice is denied because his pending criminal matters are not relevant to his civil rights claim concerning medical care.

Plaintiff claims his documentation demonstrates he has been diagnosed with achalasia with "symptoms post-operatively which . . . cause[] discomfort in varying degrees from mild to severe, and even extreme, totally debilitating pain." (ECF No. 13 at 5, 13-17.) Rather than provide plaintiff the necessary surgery, prison officials continue to transfer him to different prisons, delaying his treatment in violation of the Eighth Amendment and state law.

Plaintiff asks the court to issue an order requiring that plaintiff remain housed at CSP-SOL until his medical condition has been resolved and requiring CSP-SOL and other medical personnel to conduct a proper health risk assessment review and diagnostic exam to determine the risk associated with any transfer, and establish the necessity of the transfer, before transferring plaintiff away from CSP-SOL.

Finally, plaintiff provides the following documents:

On January 8, 1984, plaintiff, age 17, was admitted to St. Joseph's Hospital in Stockton, California, diagnosed with severe achalasia. (ECF No. 13 at 16.) Plaintiff "underwent a Heller myotomy and a hiatus hernia repair using the Belsey Mark IV technique." (Id.) Plaintiff's postoperative diagnosis was "achalasia." (ECF No. 13 at 15.)

On June 22, 2017 Dr. Chen Yuen ordered thoracic surgery for plaintiff describing the following medical necessity:

> 51 y/o male s/p fundoplication Belsey mark 4 for Hiatus hernia/achalasia 1983, he has chronic LUQ cramp, bloat, dyspepsia, slow colon transit. Dr. Chamber (surgery) consulted 1/26/16 explained to him that it might [sic] due to complication of his surgical procedure and recommended thoracic surgery consultation. Postoperative Complications: Long-term complications include gas bloat syndrome secondary to more than 240' wrap, or injury to the bilateral vagus nerves. This may require take down and redo fundoplication.

(ECF No. 13 at 13.) This form refers to the primary care physician's note of June 22, 2017, and esophagram July 3, 2017. (Id.) However, a note dated July 10, 2017, states: "criteria lacks significant physical findings and/or 24 hour pH monitoring (+) for reflux." (Id.) Moreover, it appears that Dr. Kuersten denied the request on July 10, 2017, writing:

- Does not meet Inter Qual
- Previously denied by MAR

8

- Lacks supportive documentation of medical necessity.

(Id.)

Finally, plaintiff provided a copy of page 229 from "Belsey Mark IV Repair," describing postoperative care and complications. (ECF No. 13 at 17.)

VII. Eighth Amendment Standards re Medical Care

The Eighth Amendment protects prisoners from inhumane methods of punishment and inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions-of-confinement claim, and "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citation omitted). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (citations omitted). "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred." Id. "The more basic the need, the shorter the time it can be withheld." Id. (citations omitted).

To prevail on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must show that: (1) he had a serious medical need; and (2) the defendant's response to the need was deliberately indifferent. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); see also Estelle v. Gamble, 429 U.S. 97, 106 (1976).

For a prison official's response to a serious medical need to be deliberately indifferent, the official must "'know[ ] of and disregard[ ] an excessive risk to inmate health.'" Peralta v. Dillard, 744 F.3d 1076, 1082 (9th Cir. 2014) (*en banc*) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

It is well established that "a mere difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference." Toguchi v. Chung, 391 F.3d 1051, 1058 (9th

9

Cir. 2004) (alterations in original) (citation omitted). This rule applies whether the difference is between the medical professional(s) and a prisoner or two or more medical professionals. Hamby v. Hammond, 821 F.3d 1085, 1092 (9th Cir. 2016) (citation omitted).

In appropriate cases, however, a prisoner may state a claim of deliberate indifference to medical needs based on a difference of medical opinion. To do so, the prisoner must show that "the course of treatment the doctors chose was medically unacceptable under the circumstances," and that they "chose this course in conscious disregard of an excessive risk to [the prisoner's] health." Jackson, 90 F.3d at 332 (citations omitted). Under this rule, denying an inmate a kidney transplant based on "personal animosity" rather than "honest medical judgment" would constitute deliberate indifference. Id.

VIII. Discussion

First, because plaintiff's case is still in its preliminary screening stage, the United States Marshal has yet to effect service on his behalf, defendants have no actual notice, and the court has no personal jurisdiction over any defendant at this time. See Fed. R. Civ. P. 65(d)(2); Murphy Bros., Inc., 526 U.S. at 350; Zepeda, 753 F.2d at 727-28.

Second, even assuming, *arguendo*, that the court had found plaintiff stated a cognizable civil rights claim, "[t]he fact that plaintiff has met the pleading requirements allowing him to proceed with the complaint does not, ipso facto, entitle him to a preliminary injunction." Claiborne v. Blauser, 2011 WL 3875892, at *8 (E.D. Cal. Aug. 31, 2011), report and recommendation adopted, 2011 WL 4765000 (E.D. Cal. Sept. 29, 2011). Instead, to meet the "irreparable harm" requirement, plaintiff must do more than simply allege imminent harm; he must demonstrate it. Caribbean Marine Servs. Co., Inc. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988). This requires plaintiff to demonstrate by specific facts that he faces a credible threat of immediate and irreparable harm, unless an injunction issues. Fed. R. Civ. P. 65(b). "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." Caribbean Marine, 844 F.2d at 674-75.

Here, Dr. Kuersten opined that plaintiff does not require medically necessary surgery at this time, that plaintiff is being provided appropriate medical care, and that such medical care can

be provided at any prison designated for delivering such care. Plaintiff concedes that he is receiving "some" medical care, but now claims he is not getting "all" of the medical care he believes necessary. Thus, plaintiff's allegations do not present an imminent threat of immediate harm.[7]

Moreover, plaintiff fails to demonstrate that he is at risk of imminent transfer away from CSP-SOL. As of August 28, 2017, plaintiff was still housed at CSP-SOL. Plaintiff now concedes that his medical status has been changed to "high risk," suggesting that he no longer faces a threat of transfer to an out of state facility.[8]

Finally, review of Dr. Yuen's request for thoracic surgery and Dr. Kuersten's denial of the request demonstrate that these doctors have a difference of opinion as to what treatment plaintiff should receive. Indeed, the medical record reflects that there was a lack of physical findings and/or 24 hour pH monitoring for reflux. (ECF No. 13 at 13.) Also, Dr. Yuen noted at least two major long-term complications for the proposed surgery. (Id.) In any event, the documents provided do not demonstrate that plaintiff faces an imminent threat of irreparable harm if he does not receive thoracic surgery on an emergent basis. Rather, it appears plaintiff has had this condition since he was at least 17 years old.

Because plaintiff has failed to allege sufficient facts demonstrating that he faces imminent threat of irreparable harm, his motions for injunctive relief should be denied.

In accordance with the above, IT IS HEREBY ORDERED that the Clerk of the Court is directed to assign a district judge to this case; and

////

---

[7] That is not to say that plaintiff's achalasia or hiatal hernia may not get worse, increasing plaintiff's pain and requiring repair surgery based on pain complaints. See Capri v. Cox, 2014 WL 5529355, *2 (D. Nev. Oct. 31, 2014) (prisoner suffering from "stage three hernia" which caused severe pain and prevented him from standing upright, sitting down for prolonged periods, or engaging in a normal exercise regimen, was recommended for hernia surgery, due to prisoner's complaints of pain, pending cardiac clearance based on his history of heart problems.)

[8] Of course, inmates do not have a constitutional right to be housed at a particular facility or institution or to be transferred, or not transferred, from one facility or institution to another. Olim v. Wakinekona, 461 U.S. 238, 244-48 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam).

Accordingly, IT IS HEREBY RECOMMENDED that plaintiff's motions for injunctive relief (ECF Nos. 3 & 13) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 29, 2017

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/harr0680.pi