UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYDE HOLLIS HARRIS, | No. 2:17-cv-0680 GEB KJN P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| S. KERNAN, et al., | |
| Defendants. | |

I. Introduction

Plaintiff is a state prisoner, proceeding without counsel, in an action brought under 42 U.S.C. § 1983. Plaintiff's amended complaint is before the court.

II. Plaintiff's Medical Records

Plaintiff has a history of achalasia, for which he had surgery in the 1980s,[1] and multiple endoscopic dilatations since. (ECF No. 20 at 42.) On December 31, 2009, during a telemedicine consultation, Dr. Reddy noted that the last endoscopy suggested a stricture rather than achalasia, and explained to plaintiff that they "may not be able to take away all the symptoms, but [would] be able to manage him." (ECF No. 20 at 43.) Dr. Reddy also noted plaintiff has

---

[1] On January 8, 1984, plaintiff was admitted to the hospital for severe achalasia, and the next day underwent a Heller myotomy and a hiatus hernia repair using the Belsey Mark IV technique. (ECF No. 20 at 126.)

> What appears to be radicular pain from the rib cage into the epigastric area. I do not suspect this to be GI in origin even though there is some overlay with his GI complaints and his pain. It might be worthwhile considering a diagnostic nerve root injection to see if the patient subsides. I suspect it is because of radiculopathy secondary to spine disease.

(ECF No. 20 at 42-43.) Dr. Reddy noted plaintiff's change in bowel pattern, and because of the history of floating stools, it was possible plaintiff may have giardiasis or pancreatic insufficiency. Dr. Reddy recommended a stool for Giardia antigen, as well as for fat and empiric use of pancreatic enzyme supplements, and other labwork. (ECF No. 20 at 43.)

On February 21, 2013, plaintiff was seen in the emergency room for abdominal cramping following bowel prep. (ECF No. 20 at 44.) After having a bowel movement, his pain improved. On February 22, 2013, plaintiff had a colonoscopy; his terminal ileum was found to be normal. "The cecum, ascending, transverse, and left colon were grossly normal. However, the patient had suboptimal prep and small lesions could have been missed." (ECF No. 20 at 45.)

On March 20, 2013, plaintiff was admitted to Pioneers Memorial, where he received an anterior cervical discectomy, but no reference to his GI problems. (ECF No. 46-57.) (Plaintiff's abdomen was noted as "No LKS.") ECF No. 20 at 48.

On March 26, 2013, in the discharge notes from his discectomy, Farbod Farmand, D.O. noted:

> Problem 2: Ileus/constipation. The patient has a questionable history of a motility disorder and is on baseline laxative. The patient had difficulty in having bowel movements during his hospitalization despite bowel regimen. Two days ago, I started the patient [on] Reglan and yesterday, I started the patient on erythromycin which seems to help. The patient has now had a bowel movement and is tolerating small amounts of p.o. as well.

(ECF No. 20 at 61.) "[T]he patient is to have follow-up with GI for the workup for the dysmotility disorder. The patient is [to] stay on a good bowel regimen to have regular bowel movements." (ECF No. 20 at 61.)

On August 5, 2013, radiologist Dr. Richard Black performed a gastric emptying scan and compared it to the CT of plaintiff's February 21, 2013 abdomen-pelvis. (ECF No. 20 at 66.) No gastroesophageal reflux was identified, but there was "mild delayed solid phase gastric emptying

compared to normal controls. (ECF No. 20 at 66.)

On September 19, 2013, while plaintiff was housed at Centinela, Dr. Tatiana Neumann sought a GI consultation for second opinion due to plaintiff's "two-year history of severe abdominal pain, evidence of gastroparesis on gastric emptying study," and Dr. Reddy's recommendation to get a second opinion. (ECF No. 20 at 68.)

On October 15, 2013, in telemedicine consult from Alvarado Hospital in San Diego, Dr. Alexander Shpaner noted the "[u]pper GI series for small bowel follow-through shows an entirely normal study." (ECF No. 20 at 71.)

> IMPRESSION: This is quite a complicated case of a patient who has a multitude of abdominal and other complaints which do not seem to fit any pattern of unified diagnosis. At the very least, the patient has severe irritable bowel and functional bowel disorder; however, a structure abnormality is highly unlikely given the negative workup so far.
>
> He also seems to have chronic constipation, although this has never been formally evaluated by sitz marker study. If sitz marker study is grossly positive, the patient may need to have at least partial colectomy for resolution of his constipation, which, by the way, I doubt causes all of his symptoms.
>
> Something was alluded previously to potential laparoscopy for investigational purposes. I think at this point in time it may be reasonable since we do not have any imaging or laboratory modalities to go on to explain, even in part, his symptomatology.

(ECF No. 20 at 71.) Dr. Shpaner recommended a sitz marker study; refer plaintiff to a general or laparoscopic surgeon for consideration of possible investigational laparoscopy; and "still recommend[s] the patient discontinue, or decrease, his amount of laxative that he takes, particularly the lactulose which is causing gas and distension." (ECF No. 20 at 72.) Dr. Shpaner offered plaintiff antispasmodic medication, but plaintiff refused because he does not have spasms, "and his cramping is persistent and would not likely have response to any medications." (Id.)

On May 22, 2014, in a telemedicine consultation from San Joaquin General Hospital, Dr. Rafiq Sheikh noted plaintiff's "long history of severe abdominal pain and cramping, particularly in the left upper quadrant, radiating to the back and also to the neck." (ECF No. 20 at 75.) The

Sitz marker study "revealed the markers in the cecum and the transverse colon, suggesting that his colonic transit is slow." (Id.) Plaintiff sought a laparoscopy. Dr. Sheikh reviewed plaintiff's imaging studies and upon clinical examination, noted "Soft, nontender abdomen with normal bowel sounds. However, patient complained of left upper quadrant pain . (ECF No. 20 at 76.) In the recommendations, Dr. Sheikh noted that the extensive evaluations for plaintiff's abdominal pain, nausea, vomiting and bloating have all been unremarkable. (ECF No. 20 at 76.) Dr. Sheikh opined that plaintiff's "symptoms are consistent with an irritable bowel syndrome with alternating constipation and diarrhea . . . made worse by inordinate use of laxatives[,] and "do[es] not think an laparoscopy at this stage would be revealing." (Id.) Dr. Sheikh recommended plaintiff try a low dose of antidepressant medication for a few months. In light of plaintiff's claim that the prior colonoscopy was suboptimal, Dr. Sheikh recommended a repeat colonoscopy or barium enema, but did not recommend any further endoscopic studies to GI evaluation. (ECF No. 20 at 77.) But in light of Dr. Shpaner's prior laparoscopy recommendation, Dr. Sheikh stated it would be reasonable to ask Dr. Shpaner's opinion again regarding the laparoscopy. (Id.)

On July 7, 2014, an x-ray of plaintiff's abdomen showed multiple surgical clips in the left lower quadrant; the radiologist concluded that "all of the Sitz markers [were] within the ascending colon." (ECF No. 20 at 78.) By July 9, 2014, about 50-60% of the Sitz markers had passed through the colon, with residual markers in the cecum, hepatic flexure, transverse colon, and rectosigmoid colon, and multiple vascular clips were within the left lower quadrant. (ECF No. 20 at 79.) The radiologist concluded "[i]ncomplete evacuation of all the sitz markers." (Id. at 79-80.)

On July 22, 2014, plaintiff was again seen by Dr. Shpaner, who noted plaintiff's "excruciating long-standing abdominal pain and constipation which he has had now for the past 3 years." (ECF No. 20 at 81.) Despite being seen by multiple gastroenterologists, there has been no unifying diagnosis. Plaintiff has had MRI's, CT scans, endoscopies, a colonoscopy, gastric emptying study, and the last sitz marker study showed all 5 sitz markers were still in the ascending colon after five days. (ECF No. 20 at 81-2.) Dr. Shpaner found that plaintiff's case is "quite complicated" because his complaints "do not seem to fit any pattern of unified diagnosis,

4

with the exception of chronic severe debilitating constipation versus severe irritable bowel and functional bowel disorder. Chronic constipation is severe, not responding to laxatives. Based on the sitz marker study, subtotal colectomy is one of the recommended surgical procedures versus diagnostic laparoscopy." (ECF No. 20 at 82.) Thus, Dr. Shpaner recommended that plaintiff be evaluated by a surgeon to consider diagnostic laparoscopy or therapeutic colectomy. (Id.) Because plaintiff finds this condition debilitating, he asked the doctor to say these evaluations should "be done in a stat fashion." (ECF No. 20 at 82-83.)

On July 28, 2014, Dr. Chen Yuen requested plaintiff be referred to a surgeon consistent with Dr. Shpaner's recommendations. (ECF No. 20 at 84.) However, Dr. Kuersten denied the request writing "No diagnosis and ? point of surgery in this patient with extensive normal workup." (Id.)

On December 2, 2014, plaintiff had a third telemedicine consult with Dr. Shpaner, who noted plaintiff was seen for "a follow-up of excruciating, longstanding abdominal pain and constipation which continues to be a problem," and noted plaintiff has not been seen by a surgeon. Dr. Shpaner's impression was "Chronic severe constipation with extremely positive Sitz Marker study signifying a severe case of slow transit constipation and generalized abdominal pain." (ECF No. 20 at 85.) Now, Dr. Shpaner recommended referral to another gastroenterologist for a second opinion OR referral to a surgeon for subtotal colectomy based on the Sitz Marker study. (ECF No. 20 at 85-86.)

On October 21, 2015, plaintiff was seen by Dr. Alexander Ierokomos, who also recommended either GI or general surgery to evaluate plaintiff's abdominal pain. (ECF No. 20 at 88-89.)

On January 4, 2016, Dr. Chen Yuen again requested that plaintiff be referred to a surgeon for diagnostic procedure/consultation. (ECF No. 20 at 90.) Dr. Largoza approved this request on January 8, 2016. Dr. Chambers consulted with plaintiff on January 26, 2016, and recommended "(1) GI (per endoscopy); (2) ? Thoracic surgery [to evaluate Belsey Mark IV]," adding, "I do not have the expertise for this patient." (Id.)

////

On February 8, 2016, Dr. Chen Yuen sought a thoracic surgery consult, but Dr. Kuersten denied the request, noting "GI, not thoracic (no subset)." (ECF No. 20 at 92.)

On May 8, 2016, plaintiff was discharged from NorthBay emergency by Dr. Courtney E. Chambers, with a diagnosis of abdominal gas pain. (ECF No. 20 at 93.)

On August 10, 2016, plaintiff was seen in Arizona by Dr. Nadeem Kazi for complaints of abdominal pain, dysphagia, and constipation. (ECF No. 20 at 96.) Dr. Kazi recommended a colonoscopy for plaintiff's abdominal pain and constipation to rule out malignancy. (Id.) The doctor recommended a barium esophagogram and UGI x-rays in connection with the nausea/vomiting, achalasia, and dysphagia. (ECF No. 20 at 98.) Dr. Kazi opined that plaintiff may have gastroparesis after the achalasia surgery or it could be scar tissue. (Id.)

On September 13, 2016, was seen in Arizona by Magno Dos Santos, FNP-C, who noted plaintiff's complex medical history remarkable for achalasia, lumbar pain, gastritis, constipation, and hiatal hernia. (ECF No. 20 at 100.) Plaintiff reported chronic left upper quadrant abdominal pain that is sharp and radiates to his left shoulders, and "thinks this pain is caused by food and sometime[s] by constipation." (Id.) He reported increased pain after meals, deep breathing and some movements, and expressed the need for the Belsey mark IV procedure recommended by a prior doctor. In any event, plaintiff described the pain as "unbearable," and he needs a solution. (Id.) FNP Dos Santos noted plaintiff's abdomen was "soft, non-tender, non-distended, bowel sound present all 4 quadrants, BM normal and daily." (ECF No. 20 at 101.) In addition to other treatment, the FNP wrote he would discuss plaintiff's case with Dr. Crane and recommend plaintiff be returned to California for possible cardiothoracic surgeon consult specialized for the procedure needed. The FNP recommended GI consult UGI series and Barium esophagram if plaintiff stays in Arizona, and follow-up after lab results and GI studies. (Id.)

On September 20, 2016, in Arizona, Dr. Kazi performed an Esophagogastroduodenoscopy ("EGD"), noting no stricture in the esophagus, and moderate patchy erythema with edematous mucosa of the antrum; biopsies were obtained. (ECF No. 20 at 102.) Dr. Kazi's impressions were (1) gastritis; (2) esophageal tertiary contraction; and (3) normal duodenum; the plan was to continue the Omeprazole; schedule plaintiff for a "24 hour pH monitoring and esophageal

manometry; and included detailed instructions for special colonoscopy preparation. (Id.)

On September 21, 2016, Dr. William Crane reviewed the EGD results with plaintiff, and noted that plaintiff was scheduled to transfer to California where he will undergo colonoscopy in a hospital and be evaluated by a thoracic surgeon. (ECF No. 20 at 106.) It was unclear where the 24 hour ph monitoring and esophageal manometry would take place. (Id.)

On December 13, 2016, Dr. Chen Yuen again requested a thoracic surgery evaluation consult for chronic left upper quadrant pain ("LUQ") - "s/p Achalasia," noting that on January 26, 2016, Dr. Chamber ruled out plaintiff's ventral hernia as the cause of plaintiff's pain. (ECF No. 20 at 112.) Dr. Yuen noted that plaintiff has been complaining of "balling up knot in LUQ and felt food not clearing thru the intestine for last 4 years. Dr. Chamber recommended Thoracic surgery to evaluate the possible cause of pain might relate to his achalasia surgery. Multiple GI specialists CSP/EGD, CT scan could not find the cause of pain." (ECF No. 20 at 112.) But, on December 15, 2016, Dr. Kuersten denied the request writing:

--Lacks Title 15 medical necessity
--had - CSP/EGD and CT
--[Weight] stable
--No functional impairment

(ECF No. 20 at 112.)

On April 10, 2017, Dr. Chen Yuen requested referral to orthopedic/hand surgery for plaintiff's right thumb base pain--ligamentous laxity. (ECF No. 20 at 114.) Injury occurred on March 15, 2017, has not improved, and x-ray showed slight widening of ulnar aspect of joint space; plaintiff was on thumb spica/wrist splint. (ECF No. 20 at 114.) On April 11, 2017, Dr. Kuersten denied the request, noting:

*Medical management incomplete
*...documentation inadequate to support a need for surgical management
*History of extensive prior trauma to right hand and thumb
*Consider P.T. evaluation and management

(ECF No. 20 at 114.)

On June 1, 2017, Luke Bi, M.D. saw plaintiff to establish care. (ECF No. 20 at 115.) On exam, Dr. Bi noted plaintiff's abdomen was "soft with normoactive bowel sounds; however, he

does have left-sided tenderness to palpation." (ECF No. 20 at 116.) Plaintiff reported abdominal pain, loose stools, difficulty swallowing, and difficulty with prior colonoscopy. Dr. Bi suspected "a lot of [plaintiff's] symptoms are functional, and . . . before . . . any invasive study [is done,] [plaintiff] should have some noninvasive study to validate some of his complaints." (ECF No. 20 at 116.) Dr. Bi recommended that plaintiff (1) have a barium swallow to evaluate for any esophageal narrowing or functional dysphagia; (2) have a barium enema to look for any colonic abnormalities; (3) plaintiff should chew well before swallowing; (4) be on a high-fiber diet with daily fiber supplements; and (5) follow up with GI in about four or five months. (ECF No. 20 at 117.)

On June 13, 2017, plaintiff's right thumb was examined at Weiss Orthopedics by Dr. Noah Weiss, who reviewed the March 16, 2017 x-rays and noted there is a "nondisplaced transverse fracture through the base of the distal phalanx," "gross incompetence of the ulnar collateral ligament with approximately 60 degrees of angulation," "minimal degenerative changes," and "previous thumb and small finger metacarpal fractures have healed." (ECF No. 20 at 119.) Plaintiff complained that the thumb "doesn't work;" he cannot grip, squeeze, or pinch or bend the thumb; when he tries, the thumb "slips." (ECF No. 20 at 118.) On exam, plaintiff's right thumb "reveal[ed] an obvious radial deformity at the metacarpophalangeal joint," and "gross incompetence of the ulnar collateral ligament." (ECF No. 20 at 119.) While the fracture of the thumb had healed, Dr. Weiss diagnosed plaintiff with "chronic ulnar collateral ligament insufficiency, right thumb metacarpophalangeal joint (gamekeeper's thumb)," which can be corrected by surgery. (ECF No. 20 at 119) ("Further nonoperative treatment including casting, splinting, etc., will not be effective."). Dr. Weiss noted that plaintiff "has a lot of functional difficulties with his thumb." (Id.)

On June 15, 2017, Dr. Khin Win requested that plaintiff be scheduled for the surgery recommended by Dr. Weiss, the hand surgeon. (ECF No. 20 at 120.) Shortly thereafter, Dr. Kuersten denied the request, noting:

> *Insufficient clinical information (PCP progress notes, P.E. eval. Of 4/25/17, and ortho report on RTS of 6/13/17 all lack clinical detail/examination/documentation of objective functional

impairment)

(ECF No. 20 at 120.)

On June 22, 2017, Dr. Chen Yuen requested plaintiff be referred for thoracic surgery diagnostic procedure/consult for "Chronic LUQ pain; S /P Belsey mark 4 for fundoplication/ achalasia." (ECF No. 20 at 121.) Dr. Yuen noted plaintiff has chronic LUQ cramp, bloat, dyspepsia, slow colon transit, and reiterated that in the January 26, 2016 surgical consult, Dr. Chamber suggested "it might be due to complication of his surgical procedure and recommended thoracic surgery consultation." (ECF No. 20 at 121.) "Postoperative Complications: Long-term complications include gas bloat syndrome secondary to more than 240' wrap, or injury to the bilateral vagus nerves. This may require take down and redo fundoplication." (Id.)

On July 10, 2017, an RN noted "criteria lacks significant physical findings and/or 24 hr pH monitoring (+) for reflux." (Id.)

On July 11, 2017, Dr. Kuersten denied the request, noting:

--Does not meet Inter Qual
--Previously denied by MAR
--Lacks supportive documentation of medical necessity

(ECF No. 20 at 121.)

On July 3, 2017, plaintiff received a barium enema, which was normal. (Id. at 124.) He also received an esophagram, which showed no evidence of hiatal hernia, no radiographic signs of active achalasia, and the esophagus was not abnormally distended. "There is a new small anterior defect of the cervical esophagus at the level of C4-C5," . . . "possibly represent[ing] a new esophageal web and may explain [plaintiff's] symptoms of dysphasia." (ECF No. 20 at 125.) In addition to the suspected new anterior web of the cervical esophagus, the radiologist noted "mild gastroesophageal reflux." (Id.)

III. Dr. Kuersten

Plaintiff has myriad medical issues,[2] and has received numerous medical exams and tests,

---

[2] Plaintiff's past injuries and past operations are listed in a March 20, 2013 medical record from Pioneers Memorial Healthcare District. (ECF No. 20 at 46-47.) Plaintiff also has "traumatic arthritis," (ECF No. 20 at 58), and as of June, 2017, a history of diabetes, high blood pressure, COPD, and coronary artery disease was noted (ECF No. 20 at 115).

9

including some which have been repeated.  Also, plaintiff's amended complaint is difficult to parse because he includes the long history surrounding his transfers among various prisons, as well as medical care by various medical professionals not named as defendants herein.  But the gravamen of his pleading appears to be that defendant Dr. Martin Kuersten failed to place a medical hold on plaintiff so that medical tests could establish a diagnosis, and plaintiff could receive proper treatment for his ongoing gastrointestinal ("GI") issues.  Moreover, plaintiff contends that Dr. Kuersten improperly denied the referral for plaintiff to receive the thoracic surgery recommended by GI specialist Dr. Chambers.  Instead, Dr. Kuersten chose to send plaintiff to a radiologist who is not a GI specialist.  Plaintiff claims that in the face of plaintiff's serious medical needs, which have not been properly treated for years, Dr. Kuersten's actions and failures to act constitute deliberate indifference to a significant risk to plaintiff's health.  Plaintiff contends he needs a "Balsey mark IV procedure," requiring thoracic surgery repair.  Plaintiff states there have been "only vague attempts at getting surgery over the last 20 plus months, while [he] endure[s] the smallest of liquid bowel movements and constant pain and dysfunction."  (ECF No. 20 at 8.)

Plaintiff also contends he needs orthopedic surgery to re-attach the tendon in the thumb on his right hand, which Dr. Kuersten also denied.  (ECF No. 20 at 8, 19.)

Taking plaintiff's allegations as true, and upon review of the medical records provided, plaintiff states a potentially cognizable claim against defendant Dr. Kuersten.  Plaintiff may be able to demonstrate that Dr. Kuersten was deliberately indifferent to plaintiff's serious medical needs by allegedly interfering with numerous recommendations of specialists concerning the diagnosis and treatment of plaintiff's chronic GI symptoms, suffered over more than four years, which remain undiagnosed, by denying plaintiff's primary care physicians' requests based on recommendations by medical specialists, as well as by suggesting physical therapy for plaintiff's tendon of his right thumb where the orthopedic specialist stated that "further nonoperative treatment would not be effective."  (ECF No. 20 at 110.)  See, e.g., Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000) (*en banc*) ("A prisoner need not prove that he was completely denied medical care. . . . Rather, he can establish deliberate indifference by showing that officials

intentionally interfered with his medical treatment.") (citations omitted).

IV. Dr. Chen Yuen

Plaintiff alleges that Dr. Chen Yuen "acquiesced" in the alleged "unconstitutional behavior of persistently violating a statutory duty to inquire about such behavior and to be responsible for preventing it." (ECF No. 20 at 7.) Plaintiff claims he will show that custody works in tandem with medical to raise or lower his risk level to transfer plaintiff before he can get medical attention to save money or for some other reason. Specifically, plaintiff claims that Dr. Chen Yuen is "now making toothless attempts to be more helpful by acknowledging the very surgical procedure needed," specifically, a "'Balsey mark IV procedure' requiring thoracic surgery repair," as well as surgical repair of the tendon in his right thumb. (ECF No. 20 at 8.) Plaintiff alleges there have been only "vague attempts at getting surgery over the last 20 plus months." (Id.)

Plaintiff's allegations, standing alone, do not state a cognizable civil rights violation. Plaintiff has failed to set forth specific facts demonstrating defendant Dr. Yuen's deliberate indifference. Moreover, the records provided by plaintiff demonstrate that on multiple occasions, defendant Dr. Yuen requested plaintiff be provided referrals for surgery or surgical consults, yet Dr. Kuersten denied the requests. These records do not demonstrate deliberate indifference on the part of Dr. Yuen. Nevertheless, plaintiff is granted leave to amend as to Dr. Yuen.

V. J. Clark Kelso

Plaintiff also alleges that defendant Kelso "acquiesced" in the alleged unconstitutional behavior, and allegedly worked in tandem to raise or lower his risk level for transfer purposes. (ECF No. 20 at 7.) Plaintiff fails to provide specific factual allegations as to defendant Kelso.

Moreover, even if plaintiff could allege a plausible civil rights claim, defendant Kelso would be immune from suit. Kelso was appointed to be the receiver for CDCR's health care system. See Plata v. Schwarzenegger, et al., C01-1351-TEH (N.D. Cal. Jan. 23, 2008) (class action constitutional challenge to the adequacy of medical care provided throughout the California state prison system). Judge Henderson ordered that: "The Receiver and his staff shall have the status of officers and agents of this Court and as such shall be vested with the same

11

immunities as vest with this Court." Id. at 5. Those judicial immunities extend to immunity from suit. See Pierson v. Ray, 386 U.S. 547, 553-54 (1967) ("Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction. . . ."). This "quasi-judicial immunity" shields Kelso from suit for all actions taken in his capacity as Receiver. See In re Castillo, 297 F.3d 940, 947 (9th Cir. 2002).

Here, it appears that plaintiff seeks to sue Kelso in his capacity as receiver for acts or omissions relating to plaintiff's medical needs. Kelso is immune. See Haller v. Hartley, 2013 WL 322321 (E.D. Cal. Jan. 28, 2013) ("[T]he Court finds that Kelso is entitled to quasi-judicial immunity and suit may not be maintained against him."). Accordingly, plaintiff's claims against Kelso must be dismissed without leave to amend. See, e.g., Mullis v. U.S. Bankr. Court for Dist. of Nevada, 828 F.2d 1385, 1387 n.6 (9th Cir. 1987).

VI. Remaining Defendants

Plaintiff also alleges that the remaining defendants "acquiesced" in the alleged unconstitutional behavior, and apparently worked in tandem to raise or lower his risk level for transfer purposes. (ECF No. 20 at 7.) Plaintiff's vague and conclusory claims that these defendants "acquiesced" in the alleged behavior are insufficient to state a cognizable civil rights claim. As plaintiff was informed in the prior screening order, he is required to set forth specific facts demonstrating there is an actual connection or link between the actions of each defendant and the alleged constitutional violation. (ECF No. 15 at 3-4.) Plaintiff has failed to do so. In addition, plaintiff provides no facts to demonstrate that his claims against defendants Arnold and Wamble are not based solely on a theory of respondeat superior. (ECF No. 15 at 4.)

Because plaintiff includes no specific charging allegations as to each of these remaining defendants, his claims must be dismissed. In an abundance of caution, plaintiff is granted leave to amend if he wishes to delay service on defendant Kuersten and attempt to state cognizable claims as to each of the remaining defendants.

VII. Leave to Amend

The court has reviewed plaintiff's complaint and, for the limited purposes of § 1915A

12

screening, finds that it states a potentially cognizable claim against defendant Dr. Kuersten. See 28 U.S.C. § 1915A.

For the reasons stated below, the court finds that the complaint does not state a cognizable claim against defendants Arnold, Voong, Dr. Largoza, Dr. Chen Yuen, Guillory, and Wamble. The claims against such defendants are hereby dismissed with leave to amend.

Plaintiff may proceed forthwith to serve defendant Dr. Kuersten and pursue his claims against only such defendant or he may delay serving any defendant and attempt again to state a cognizable claim against the remaining defendants.

If plaintiff elects to attempt to amend his complaint to state a cognizable claim against defendants Arnold, Voong, Dr. Largoza, Dr. Chen Yuen, Guillory, and Wamble, he has thirty days in which to do so. He is not obligated to amend his complaint.

If plaintiff elects to proceed forthwith against defendant Dr. Kuersten, against whom he has stated a potentially cognizable claim for relief, then within thirty days he must return materials for service of process enclosed herewith. In this event the court will construe plaintiff's election as consent to dismissal of all claims against the remaining defendants without prejudice.

Any amended complaint must show the federal court has jurisdiction, the action is brought in the right place, and plaintiff is entitled to relief if plaintiff's allegations are true. It must contain a request for particular relief. Plaintiff must identify as a defendant only persons who personally participated in a substantial way in depriving plaintiff of a federal constitutional right. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation). If plaintiff contends he was the victim of a conspiracy, he must identify the participants and allege their agreement to deprive him of a specific federal constitutional right.

In an amended complaint, the allegations must be set forth in numbered paragraphs. Fed. R. Civ. P. 10(b). Plaintiff may join multiple claims if they are all against a single defendant. Fed. R. Civ. P. 18(a). If plaintiff has more than one claim based upon separate transactions or occurrences, the claims must be set forth in separate paragraphs. Fed. R. Civ. P. 10(b).

13

The federal rules contemplate brevity. See Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any heightened pleading standard in cases other than those governed by Rule 9(b)"); Fed. R. Civ. P. 84; cf. Rule 9(b) (setting forth rare exceptions to simplified pleading). Plaintiff's claims must be set forth in short and plain terms, simply, concisely and directly. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8. Plaintiff must not include any preambles, introductions, argument, speeches, explanations, stories, griping, vouching, evidence, attempts to negate possible defenses, summaries, and the like. McHenry v. Renne, 84 F.3d 1172, 1177-78 (9th Cir. 1996) (affirming dismissal of § 1983 complaint for violation of Rule 8 after warning); see Crawford-El v. Britton, 523 U.S. 574, 597 (1998) (reiterating that "firm application of the Federal Rules of Civil Procedure is fully warranted" in prisoner cases). The court (and defendant) should be able to read and understand plaintiff's pleading within minutes. McHenry, 84 F.3d at 1179-80. A long, rambling pleading including many defendants with unexplained, tenuous or implausible connection to the alleged constitutional injury, or joining a series of unrelated claims against many defendants, very likely will result in delaying the review required by 28 U.S.C. § 1915 and an order dismissing plaintiff's action pursuant to Fed. R. Civ. P. 41 for violation of these instructions.

A district court must construe a pro se pleading "liberally" to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity to cure them. See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000). While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft, 556 U.S. at 678 (quoting Bell Atlantic Corp., 550 U.S. at 570).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility

> standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft, 566 U.S. at 678 (citations and quotation marks omitted). Although legal conclusions can provide the framework of a complaint, they must be supported by factual allegations, and are not entitled to the assumption of truth. Id.

An amended complaint must be complete in itself without reference to any prior pleading. Local Rule 15-220; see Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading is superseded.

By signing a second amended complaint, plaintiff certifies he has made reasonable inquiry and has evidentiary support for his allegations, and for violation of this rule the court may impose sanctions sufficient to deter repetition by plaintiff or others. Fed. R. Civ. P. 11.

VIII. Conclusion

Accordingly, IT IS HEREBY ORDERED that:

1. Claims against defendants Arnold, Voong, Dr. Largoza, Dr. Chen Yuen, Guillory, and Wamble, are dismissed with leave to amend. Within thirty days of service of this order, plaintiff may file a second amended complaint to attempt to state cognizable claims against such defendants. Plaintiff is not obliged to amend.

2. The allegations in the pleading are sufficient at least to state potentially cognizable claims against defendant Dr. Kuersten. See 28 U.S.C. § 1915A. With this order the Clerk of the Court shall provide to plaintiff a blank summons, a copy of the amended complaint (ECF No. 20), one USM-285 form and instructions for service of process on defendant Kuestner. Within thirty days of service of this order plaintiff may return the attached Notice of Submission of Documents with the completed summons, the completed USM-285 form, and two copies of the endorsed amended complaint (ECF No. 20). The court will transmit them to the United States Marshal for service of process pursuant to Fed. R. Civ. P. 4. Defendant Kuestner will be required to respond to plaintiff's allegations within the deadlines stated in Fed. R. Civ. P. 12(a)(1). In this event, the court will construe plaintiff's election to proceed forthwith as consent to an order dismissing his

15

defective claims against the remaining defendants without prejudice.

3. Failure to comply with this order will result in a recommendation that this action be dismissed.

Further, IT IS RECOMMENDED that plaintiff's claims against defendant Clark be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 20, 2017

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/harr0680.14o

```
 1
 2
 3
 4
 5
 6
 7                    UNITED STATES DISTRICT COURT
 8                   FOR THE EASTERN DISTRICT OF CALIFORNIA
 9
10  WAYDE HOLLIS HARRIS,              No. 2:17-cv-0680 KJN P
11              Plaintiff,
12        v.                          NOTICE OF SUBMISSION OF
                                      DOCUMENTS
13  S. KERNAN, et al.,
14              Defendants.
15
16        Plaintiff submits the following documents in compliance with the court's order filed
17  _____.
18        _____   completed summons form
19        _____   completed forms USM-285
20        _____   copies of the  _____
21                                 Amended Complaint
22             Plaintiff consents to the dismissal of defendants Dr. Yuen, Voong, Dr.
23        Largoza, Guillory, and Wamble without prejudice.
24        OR
    _____  Plaintiff opts to file a second amended complaint and delay service of
25  process.
26  DATED:
27                                          _____
                                            Plaintiff
28
```