UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYDE HOLLIS HARRIS,<br><br>        Plaintiff,<br><br>    v.<br><br>S. KERNAN, et al.,<br><br>        Defendants. | No. 2:17-cv-0680 TLN KJN P<br><br><br>ORDER |

Plaintiff is a state prisoner, proceeding without counsel. This action proceeds on plaintiff's Eighth Amendment medical claims against defendant Dr. Kuersten. (ECF No. 22 at 9-10.) By order filed August 1, 2019, plaintiff's motion to compel further response to request for production of documents No. 14 was denied. On August 19, 2019, plaintiff objected to such denial. The undersigned construes plaintiff's objections as a request for reconsideration of the order denying further production. Upon reconsideration, as set forth below, plaintiff's request for further production is denied.

> REQUEST NO. 14: All documents, rules and procedures describing the functions of the daily medical "Huddle." (sp?)
>
> RESPONSE TO REQUEST NO. 14: There are no documents responsive to this request.

(ECF No. 59 at 30.) The request was denied because defendant is not required to produce documents that do not exist.

| | |
|---|---|
| 1 | Plaintiff now claims that there are two different "huddles." There is an 8:00 a.m. "daily |
| 2 | huddle" of care teams. But there is also an 8:30 a.m. "huddle" that consists of medical staff, |
| 3 | custody staff, associate wardens of medical and custody and the prison warden also called the |
| 4 | "Warden's meeting." (ECF No. 68 at 1.) Plaintiff declares that "[t]he subjects and minutes are |
| 5 | recorded in some way of these meetings." (Id.) Plaintiff contends such "records are important to |
| 6 | plaintiff's claims in showing that the 'institutional needs' transfers of plaintiff were in fact |
| 7 | 'custody' assisting 'medical' in medical departments needs to deprive and delay plaintiff's |
| 8 | medical needs." (Id.) |

First, plaintiff's initial request for production did not differentiate between two different huddles. Indeed, it appears that he requested documents from the "daily huddle" of care teams as described in his objections because he called it the "daily medical 'Huddle.'" Defendant is not required to speculate as to the various "huddles" to which plaintiff might be referring.

Second, plaintiff's explanation of the importance of the discovery from the subsequent 8:30 a.m. meeting that includes custody staff does not explain any relevance to the sole claims remaining in this action. In his pleading, plaintiff alleges that:

> defendant Dr. Martin Kuersten failed to place a medical hold on plaintiff so that medical tests could establish a diagnosis, and plaintiff could receive proper treatment for his ongoing gastrointestinal ("GI") issues. Moreover, plaintiff contends that Dr. Kuersten improperly denied the referral for plaintiff to receive the thoracic surgery recommended by GI specialist Dr. Chambers. Instead, Dr. Kuersten chose to send plaintiff to a radiologist who is not a GI specialist. Plaintiff claims that in the face of plaintiff's serious medical needs, which have not been properly treated for years, Dr. Kuersten's actions and failures to act constitute deliberate indifference to a significant risk to plaintiff's health. Plaintiff contends he needs a "Balsey mark IV procedure," requiring thoracic surgery repair. Plaintiff states there have been "only vague attempts at getting surgery over the last 20 plus months, while [he] endure[s] the smallest of liquid bowel movements and constant pain and dysfunction." (ECF No. 20 at 8.)
>
> Plaintiff also contends he needs orthopedic surgery to re-attach the tendon in the thumb on his right hand, which Dr. Kuersten also denied. (ECF No. 20 at 8, 19.)

(ECF No. 22 at 10.) The court found that plaintiff stated a potentially cognizable Eighth Amendment claim as to Dr. Kuersten:

2

> Plaintiff may be able to demonstrate that Dr. Kuersten was deliberately indifferent to plaintiff's serious medical needs by allegedly interfering with numerous recommendations of specialists concerning the diagnosis and treatment of plaintiff's chronic GI symptoms, suffered over more than four years, which remain undiagnosed, by denying plaintiff's primary care physicians' requests based on recommendations by medical specialists, as well as by suggesting physical therapy for plaintiff's tendon of his right thumb where the orthopedic specialist stated that "further nonoperative treatment would not be effective." (ECF No. 20 at 110.) <u>See</u>, <u>e.g.</u>, <u>Lopez v. Smith</u>, 203 F.3d 1122, 1132 (9th Cir. 2000) (en banc) ("A prisoner need not prove that he was completely denied medical care. . . . Rather, he can establish deliberate indifference by showing that officials intentionally interfered with his medical treatment.") (citations omitted).

(ECF No. 22 at 10-11.) Plaintiff's claims against Dr. Kuersten do not involve custody staff or decisions to transfer plaintiff to a different prison. Rather, the remaining claims focus on the actions and inactions of Dr. Kuersten in providing medical care. Although plaintiff alleges Dr. Kuersten failed to put a medical hold on plaintiff to prevent his transfer, plaintiff does not allege that Dr. Kuersten was involved in ordering such transfer. Thus, even assuming there were documents from an 8:30 a.m. meeting or huddle that included custody staff, such documents would not be relevant here.

Therefore, upon reconsideration, plaintiff's request to require further production in response to request number 14 is denied.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's objections (ECF No. 68) are construed as a request for reconsideration;

2. Plaintiff's request for reconsideration (ECF No. 68) is granted; and

3. Upon reconsideration, plaintiff's request for further production to request number 14 is denied.

Dated: August 26, 2019

/harr0680.mtc2

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

3