1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   WAYDE HOLLIS HARRIS,                       No. 2:17-cv-0680 TLN KJN P

12                  Plaintiff,

13           v.                                 ORDER

14   S. KERNAN, et al.,

15                  Defendants.

16

17          Plaintiff is a state prisoner, proceeding without counsel. This action proceeds on

18   plaintiff's Eighth Amendment medical claims against defendant Dr. Kuersten, Chief Medical

19   Officer at California State Prison, Solano ("CSP-Solano"). Plaintiff's motion to compel further

20   responses to interrogatories is before the court. Defendant filed an opposition, plaintiff did not

21   file a reply. As set forth below, plaintiff's motion is denied.

22   I. Plaintiff's Claims

23          In screening the operative pleading, the undersigned found that plaintiff may be able to

24   demonstrate that Dr. Kuersten was deliberately indifferent to plaintiff's serious medical needs by

25   allegedly interfering with numerous recommendations of specialists concerning the diagnosis and

26   treatment of plaintiff's chronic GI symptoms, suffered over more than four years, which remain

27   undiagnosed, by denying plaintiff's primary care physicians' requests based on recommendations

28   by medical specialists, as well as by suggesting physical therapy for plaintiff's tendon of his right

thumb where the orthopedic specialist stated that "further nonoperative treatment would not be effective." (ECF No. 20 at 110.)  See, e.g., Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000) (en banc) ("A prisoner need not prove that he was completely denied medical care. . . .  Rather, he can establish deliberate indifference by showing that officials intentionally interfered with his medical treatment.") (citations omitted).  (ECF No. 22 at 10-11.)

II. Legal Standards Governing Discovery

Under Rule 37 of the Federal Rules of Civil Procedure, "a party seeking discovery may move for an order compelling an answer, designation, production, or inspection."  Fed. R. Civ. P. 37(a)(3)(B).  Such "motion may be made if: . . . (iii) a party fails to answer an interrogatory submitted under Rule 33; . . . ."  Fed. R. Civ. P. 37(a)(3)(B).  An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).  "District courts have 'broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16.'"  Hunt v. Cnty. of Orange, 672 F.3d 606, 616 (9th Cir. 2012) (quoting Avila v. Willits Envtl. Remediation Trust, 633 F.3d 828, 833 (9th Cir. 2011)).

Plaintiff bears the burden of informing the court (1) which discovery requests are the subject of his motion to compel, (2) which of the responses are disputed, (3) why he believes the response is deficient, (4) why defendants' objections are not justified, and (5) why the information he seeks through discovery is relevant to the prosecution of this action.  McCoy v. Ramirez, 2016 WL 3196738 at *1 (E.D. Cal. 2016); Ellis v. Cambra, 2008 WL 860523, at *4 (E.D. Cal. 2008) ("Plaintiff must inform the court which discovery requests are the subject of his motion to compel, and, for each disputed response, inform the court why the information sought is relevant and why defendant's objections are not justified.").

The purpose of discovery is to "remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute."  U.S. ex rel. O'Connell v. Chapman University, 245 F.R.D. 646, 648 (C.D. Cal. 2007) (quotation and citation omitted).  Rule 26(b)(1) of the Federal Rules of Civil Procedure offers guidance on the scope of discovery permitted:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Rule 26(b)(1). "Relevance for purposes of discovery is defined very broadly." Garneau v. City of Seattle, 147 F.3d 802, 812 (9th Cir. 1998). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." Bryant v. Ochoa, 2009 WL 1390794 at *1 (S.D. Cal. May 14, 2009) (internal citation omitted).

With respect to interrogatories, a party may propound interrogatories related to any matter that may be inquired into under Federal Rule of Civil Procedure 26(b). Fed. R. Civ. P. 33(a)(2). An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact. Id. A party is obligated to respond to interrogatories to the fullest extent possible under oath. Fed. R. Civ. P. 33(b)(3). Any objections must be stated with specificity. Fed. R. Civ. P. 33(b)(4); Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981). The responding party shall use common sense and reason. Collins v. Wal-Mart Stores, Inc., 2008 WL 1924935, *8 (D. Kan. Apr. 30, 2008). A responding party is not generally required to conduct extensive research in order to answer an interrogatory, but a reasonable effort to respond must be made. Gorrell v. Sneath, 292 F.R.D. 629, 632 (E.D. Cal. 2013); L.H. v. Schwarzenegger, 2007 WL 2781132, *2 (E.D. Cal. Sept. 21, 2007). Further, the responding party has a duty to supplement any responses if the information sought is later obtained or the response provided needs correction. Fed. R. Civ. P. 26(e)(1)(A).

A district court has broad discretion in deciding whether to require answers to interrogatories. See 8A Wright, Miller & Marcus, Federal Practice and Procedure § 2176 at 311 and n.1 (Civil 2d ed. 1994).

////

III. Interrogatories

Interrogatory No. 1 inquires whether defendant "ever requested [plaintiff] be transferred out of CSP-Solano?" Without waiving objections, defendant stated that he does "not recall ever requesting a transfer for plaintiff as there was no medical reason to transfer him." (ECF No. 70 at 5.) In addition, Dr. Kuersten noted that he was informed that plaintiff received an involuntary, non-adverse transfer to Folsom State Prison in 2016 which was initiated by custody staff. Plaintiff argues that defendant's objections are without merit and evasive, and that defendant has a duty to investigate, including requesting information from persons and entities under defendant's control. Plaintiff then describes how he was transferred at various times, and claims that his transfer in 2016 was made possible by Dr. Kohler lowering plaintiff's medical risk from high to medium on January 21, 2016. However, plaintiff's motion fails to identify a direct connection between Dr. Kuersten and the question asked. Even if Dr. Kuersten had inquired as to the actions of Dr. Kohler, it would not have identified a medical transfer order by Dr. Kuersten. Moreover, it does not appear that the answers plaintiff sought fit the call of the question: plaintiff appears to contend that because certain nonparty medical staff lowered plaintiff's medical risk status, it enabled his transfers to prisons which would not accept a high risk medical inmate. But, as the court recently noted, "[p]laintiff's claims against Dr. Kuersten do not involve custody staff or decisions to transfer plaintiff to a different prison . . . Although plaintiff alleges [defendant] failed to put a medical hold on plaintiff to prevent his transfer, plaintiff does not allege that [defendant] was involved in ordering such transfer." (ECF No. 69 at 3.) Plaintiff's motion to compel further response is denied.

Interrogatory No. 2 asks "what is the type of communication . . . used to make the request for [plaintiff] to be transferred out of CSP-Solano?" Defendant objected that the request was vague as to time and type of transfer, and presumes facts not established as true, specifically that there was a request for plaintiff to be transferred. Without waiving such objections, defendant identified health care transfer procedures produced to plaintiff. (ECF No. 70 at 5-6.) In his motion, plaintiff claims his request was directed at the type of communication RN Dechant would have used in 2016 through custody staff who handle transfers, and Dr. Kohler would have used in

4

lowering plaintiff's medical risk on January 21, 2016, resulting in plaintiff's transfer. As argued by defendant, defendant is not required to obtain discovery from third parties on plaintiff's behalf. Fed. R. Civ. P. 33(a) (interrogatories are limited to parties); Heilman v. Vojkufka, 2011 WL 677877, * 13 (E.D. Cal. Feb. 17, 2011) ("defendant is not obliged to discover information from third parties on plaintiff's behalf.") Also, Rule 33(d) of the Federal Rules of Civil Procedure allows a responding party to respond to an interrogatory by producing business records. In addition, plaintiff fails to explain how this request is relevant to the medical care provided by Dr. Kuersten. Plaintiff's motion to compel further response is denied.

Interrogatory No. 3 asks who in the CSP-Solano custody department is to be contacted when a request to transfer plaintiff is made. Defendant objected that the request was vague as to time and type of transfer, but without waiving the objections, identified the governing health care transfer procedures produced to plaintiff. Defendant added that "[g]enerally, each transfer of medical care within CDCR is facilitated through a handoff process where information is provided by the designated sending care team member to the designated receiving care team member." (ECF No. 70 at 6.) In his motion, plaintiff now identifies the transfer time to be from October 2015 to April 2017, specifically, the type of transfer RN Dechant referred to on October 11, 2016, and November 29, 2016, and the transfer involving Dr. Kohler reducing plaintiff's medical risk, and the non-adverse transfers on June 1, 2016, and November 7, 2016. Further, plaintiff objects that the document identified by defendant does not describe the type of transfer information requested in No. 3. In opposition, defendant states that he was not present for such 2016 conversation involving RN Dechant, so any response would be speculative. Plaintiff is advised that he cannot modify his interrogatory in a subsequent motion to compel. Defendant's objections are sustained. No further response is required.

Interrogatory No. 4 asks whether "any medical staff" ever requested to have plaintiff transferred out of CSP-Solano. Defendant objected that the interrogatory was vague as to time and reason for the transfer and assumes facts not established as true, specifically, that plaintiff was transferred out for medical reasons. Without waiving objections, defendant stated he has "no recollection of 'any medical staff' ever asking defendant to transfer plaintiff. (ECF No. 70 at 7.)

In his motion, plaintiff now identifies a time frame, and provides more specific facts, arguing that defendant should have asked RN Dechant and Dr. Kohler. Defendant's objections are sustained; no further response is required.

Interrogatory No. 5 asks whether defendant asked Dr. Kohler to lower plaintiff's medical risk. Without waiving objections, defendant responded, "no, there was no reason for me to seek any physician to lower plaintiff's medical risk. Such a decision would be made by plaintiff's primary care physician." (ECF No. 70 at 7.) In his motion, plaintiff claims "there was surely [a] reason to lower plaintiff's medical risk so that plaintiff would then be eligible for transfer out of state," and attempts to connect defendant's denial of the thoracic surgical consult on March 8, 2016, with plaintiff's subsequent transfer. (ECF No. 63 at 4.) But defendant provided an answer to plaintiff's interrogatory, and his motion attempts to broaden the call of the question. No further response is required.

Interrogatory No. 6 asked defendant why Dr. Kohler lowered plaintiff's medical risk on January 21, 2016, when plaintiff was approved for surgery consult on January 8, 2016. Defendant objected on grounds it called for speculation and lacks foundation, but without waiving such objections, responded: "I do not know." (ECF No. 70 at 8.) In his motion, plaintiff claims the response is evasive because defendant has a duty to investigate. As noted above, defendant is not required to engage in third party discovery on plaintiff's behalf. Defendant responded to the request; no further response is required.

Interrogatory No. 7 inquires why Dr. Kohler is no longer at CSP-Solano; defendant objected on relevance grounds, presumes facts not established as true, lacks foundation and calls for speculation, and could not answer based on such objections. (ECF No. 70 at 8.) In his motion, plaintiff contends that the objections are without merit and evasive and argues that Dr. Kohler, who was not plaintiff's PCP, was used to lower plaintiff's medical risk and is a "key ingredient" to the June 1, 2016 transfer. (ECF No. 63 at 5.) But defendant's objections are well-taken. Plaintiff fails to identify any connection between Dr. Kohler and defendant, or to tie defendant to plaintiff's transfer on June 1, 2016. Indeed, defendant confirmed he did not ask Dr. Kohler to lower plaintiff's medical risk (Interrogatory No. 5 response). Moreover, as set forth

above, plaintiff's claims against Dr. Kuersten involve his decisions concerning medical care, not transfers. No further response is required.

Interrogatory No. 8 asks "who canceled the Gastroenterologist specialty appointment that was approved--scheduled and pending as an upcoming appointment that existed on 12-12-16 as a future appointment but then on 12-13-16 it had been canceled and erased. Who canceled it?" (ECF No. 70 at 9.) Defendant objects on the grounds that the question presumes facts not established as true, specifically that plaintiff had an approved and scheduled appointment with a gastroenterologist, and calls for speculation; without waiving such objections, defendant responded that he did not know. (Id.) In his motion, plaintiff maintains that defendant has a duty to make a reasonable inquiry and because defendant is "over" medical records and its supervisor, defendant could make contact to obtain the information requested. Defendant's objections are sustained, and no further response is required.

Interrogatory No. 9 asks "who altered the medical record of RN visit of inmate Harris of 12-12-16 so it would not show existence and discussion of approved and scheduled up coming Gastroenterologist specialty appointment that RN Rouso discussed with inmate Harris on 12-12-16?" (ECF No. 70 at 9.) Defendant objects on the grounds that the question assumes facts not established as true, specifically, that plaintiff's medical records have been altered, and calls for speculation. Without waiving such objections, defendant responded that he did not know. Defendant added that "generally, if a medical record is altered there is an addendum to the record, or a strike out with the initials of the person who changed the record. Once the record is scanned into the system it cannot be altered." (ECF No. 70 at 9-10.) In his motion, plaintiff again asks the court to compel defendant to contact a nonparty and to further investigate. Defendant's objections are sustained and no further response is required.

Interrogatory No. 10 asked "who made it so that the medical records computer will not go back past July 2017 in the Canceled-Voided Orders section?" (ECF No. 70 at 10.) Defendant objected on relevance grounds, presumes facts not established as true, lacks foundation, and calls for speculation. Without waiving such objections, defendant responded that he has no personal knowledge as to why, or if, the medical records do not go past July 2017 in the Voided Orders

7

section.  (Id.)  In his motion, plaintiff argues that this question is highly relevant because Dr. Kuersten is "over medical records" and plaintiff has named over 100 doe defendants.  In addition, plaintiff points out that defendant answered as to voided orders, but failed to answer as to cancelled orders, and left out "back."  (ECF No. 63 at 7.)  In his opposition, defendant states that plaintiff seeks information on the computer system, and assumes certain medical records do not go past a certain date.  Defendant objects that plaintiff is again attempting to obtain information from a non-party through this interrogatory.  Defendant's objections are well-taken.  Whether or not defendant specifically addressed the cancelled orders section, defendant responded that he has no personal knowledge of the information plaintiff seeks.  No further response is required.

Interrogatory No. 11 inquires "when was the first block/lock put on the 12-12-16 RN Rouso 'face to face-modify section' of [plaintiff's] medical records?"  (ECF No. 70 at 11.)  Defendant objected that plaintiff's request was unintelligible and cannot be answered as phrased.  In his motion, plaintiff contends the request is clear, but clarifies that the question concerns when the DAG put a hold on plaintiff's medical record, because if the hold was put on prior to the filing of this action, it would prevent plaintiff from obtaining the modification of the RN Rouso visit on December 12, 2016, or the morning of December 13, 2016.  (ECF No. 63 at 9.)  In his opposition, defendant clarifies that "the letter to which plaintiff refers is a form letter, sent in every medical case, to prevent medical records from being destroyed during the pendency of a lawsuit," and defendant has no knowledge of this letter.  (ECF No. 70 at 11.)  In addition, defendant states that "there is no such thing as a 'face to face section' or a modify section in plaintiff's medical file," and that plaintiff's explanation for what he is seeking is also unintelligible.  The undersigned finds defendant's objections are well-taken and no further response is required.

Interrogatory No. 13 asks defendant whether he "ever said to anyone of medical staff at CSP-Solano anything to the effect or similar to the following:  'I'm not concerned about any inmates complaints or lawsuit.  I have all the state attorneys in Sacramento behind me.'?"  (ECF No. 70 at 11.)  Defendant responded, "No, I have no recollection of having ever made such a statement."  (Id.)  In his motion, plaintiff suggests that Dr. Kuersten ask his fellow members of the daily morning medical huddle in order to refresh his recollection.  (ECF No. 63 at 15.)

8

However, defendant answered plaintiff's interrogatory. No further response is required.

Interrogatory No. 14 inquires "who on medical staff requested [plaintiff] be transferred out of CSP-Solano in March 2017?" (ECF No. 70 at 12.) Defendant objected that the question presumes facts not established as true (that plaintiff's transfer involved medical staff), and calls for speculation; without waiving such objections, defendant responded "I do not know, but . . . believe the transfer decision was made by custody staff." (Id.) In his motion, plaintiff argues that defendant's response is evasive between defendant did not investigate and identify who in custody makes the decision for transfers and to inquire if any medical staff, and who on the medical staff, requested plaintiff be transferred out of CSP-Solano in March of 2017. (ECF No. 63 at 15.) However, that was not the question plaintiff asked. Defendant's objections are sustained, and no further response is required.

Interrogatory No. 15 asks whether defendant was "upset with Dr. Foreman for putting [plaintiff] in the mental health system in 2017?" (ECF No. 70 at 12.) Defendant objected that the term "upset" is vague, and assumes defendant "knew plaintiff was receiving mental health care in 2017." (Id.) Without waiving such objections, defendant stated he has "no personal knowledge that Dr. Foreman placed plaintiff in the mental health care system." (Id.) In his motion, plaintiff attempts to re-phrase his interrogatory, but defendant answered that he has no personal knowledge that Dr. Foreman put plaintiff in the mental health care system. Thus, no further response is required.

Interrogatory No. 19 asks defendant "whether any of medical staff ever requested RN Lahey not to show [plaintiff] his medical records on the computer?" (ECF No. 70 at 13.) Defendant objected on the grounds that "any of medical staff" is vague, presumes facts not established as true, lacks foundation, and calls for speculation, but without waiving such objections, responded that he has no knowledge of whether any "medical staff" requested plaintiff not be shown his medical records. (Id.) In his motion, plaintiff requests that defendant be compelled to speak with nonparty Nurse Lahey to determine whether anyone asked her to deny plaintiff access to his medical records. (ECF No. 63 at 16.) However, as set forth above, the court cannot compel defendant to discover information from third parties. In any event, plaintiff

was given all of his medical records from October 28, 2008, through July 31, 2019, consisting of two banker's boxes of documents. (ECF No. 71 at 2.) Defendant's objections are sustained, and no further response is required.

Interrogatory No. 20 inquires whether "any of your medical staff ever requested RN Morin not to show [plaintiff] his medical records on the computer?" (ECF No. 70 at 13.) Defendant objected that "any of medical staff" is vague, presumes facts not established as true, lacks foundation, and calls for speculation, but stated defendant has no knowledge of whether any "medical staff" requested plaintiff not be shown his medical records. (Id.) In his motion, plaintiff asks the court to compel defendant to speak with nonparty Nurse Morin to determine whether anyone asked her to deny plaintiff such access. But, as discussed above, the court cannot compel defendant to obtain information from third parties on plaintiff's behalf. In any event, plaintiff has been provided with copies of his medical records. (ECF No. 71 at 2.) Defendant's objections are sustained, and no further response is required.

Interrogatory No. 21 asks "who in the medical department contacted who in the custody department in regards to c/o Stiltzner and his witnessing of what he saw and read of inmate Harris's gastroenterologist specialty appointment on 12-12-16 and what c/o Stiltzner also stated to Dr. Chen on 12-13-16. Who in medical contacted custody?" (ECF No. 63 at 27.) Defendant objects that the request assumes facts not established as true, specifically that Officer Stilzner[1] had access to and read plaintiff's medical records, lacks foundation and calls for speculation. (ECF No. 70 at 14.) Without waiving such objections, defendant stated that he does not have knowledge of this incident or who might be involved. In his motion, plaintiff asks the court to compel defendant to question nonparty Dr. Chen to find out whether nonparty Stilzner was able to access plaintiff's medical records. (ECF No. 63 at 17.) Defendant's objections are sustained and no further response is required.

In follow-up to Interrogatory No. 21, Interrogatory No. 22 asks who in the custody department was contacted to talk to C/O Stilzner about December 12 & 13, 2016 incidents at A

---

[1] While not entirely clear, it appears that Officer Stiltzner, referenced by plaintiff, and Officer Stilzner, referenced by defendant, are the same officer.

yard medical. (ECF No. 70 at 14.) Defendant objects on the grounds that the referenced incidents are vague, presumes facts not established as true, specifically that Stilzner had access and read plaintiff's medical records, lacks foundation, and calls for speculation. (ECF No. 70 at 15.) Without waiving such objections, defendant stated he has no knowledge of such incidents or who might be involved. In his motion, plaintiff again asks the court to compel defendant to find out whether nonparty Stilzner was able to access plaintiff's medical file and to find out other custody staff with whom nonparty Stilzner discussed plaintiff's medical file. (ECF No. 63 at 18.) Defendant's objections are sustained and no further response is required.

Interrogatory No. 23 asks defendant to "state the name and address or otherwise identify and locate any person who, to you or your attorney's knowledge, claims to know of facts relevant to the conduct described in these interrogatories." (ECF No. 70 at 15.) Defendant objects on the grounds that it is vague, irrelevant to matters at issue, and overly broad. Without waiving such objections, defendant responded "any medical staff members with whom plaintiff had contact, and custody staff who were involved in plaintiff's transfers, among others." (Id.) In his motion, plaintiff contends that defendant's response is unintelligible and the objections are without merit, and argues that defendant "has a good idea where the information . . . is likely to be located." (ECF No. 63 at 18.) Plaintiff then provides a laundry list of staff from whom defendant could obtain such information. (Id. at 19.) As set forth above, the court cannot compel defendant to obtain discovery from third parties on plaintiff's behalf. Defendant's objections are sustained and no further response is required.

Accordingly, IT IS HEREBY ORDERED that plaintiff's motion to compel further responses to interrogatories (ECF No. 63) is denied.

Dated: September 10, 2019

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/harr0680.mtc3

11