UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYDE HOLLIS HARRIS, | No. 2:17-cv-0680 TLN KJN P |
| Plaintiff, | |
| v. | ORDER |
| S. KERNAN, et al., | |
| Defendants. | |

Plaintiff is a state prisoner, proceeding without counsel. This action proceeds on plaintiff's Eighth Amendment medical claims against defendant Dr. Kuersten.[1] On September 19, 2019, plaintiff was granted leave to file a response to defendant's response to the court's August 1, 2019 order (ECF No. 71). (ECF No. 75.) Plaintiff filed his response, requesting an order requiring further compliance; defendant filed an opposition, and plaintiff filed a reply.

---

[1] The undersigned found that plaintiff may be able to demonstrate that Dr. Kuersten was deliberately indifferent to plaintiff's serious medical needs by allegedly interfering with numerous recommendations of specialists concerning the diagnosis and treatment of plaintiff's chronic GI symptoms, suffered over more than four years, which remain undiagnosed, by denying plaintiff's primary care physicians' requests based on recommendations by medical specialists, as well as by suggesting physical therapy for plaintiff's tendon of his right thumb where the orthopedic specialist stated that "further nonoperative treatment would not be effective." (ECF No. 20 at 110.) See, e.g., Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000) (*en banc*) ("A prisoner need not prove that he was completely denied medical care. . . . Rather, he can establish deliberate indifference by showing that officials intentionally interfered with his medical treatment.") (citations omitted). (ECF No. 22 at 10-11.)

On December 12, 2019, defendant was ordered to file a sur-reply to plaintiff's reply. (ECF No. 84.) On January 6, 2020, plaintiff filed a motion for clarification of such order. Defendant filed an amended sur-reply, and plaintiff filed a reply.[2] (ECF Nos. 88, 89.)

As discussed below, the undersigned finds that defendant cannot be compelled to produce documents that cannot be located, and sets a further schedule for this litigation.

I. Background

On August 1, 2019, plaintiff's motion to compel further production of documents was partially granted, and the court ordered, in pertinent part:

> 1. Within thirty days, in response to Request No. 8, defendant shall provide plaintiff with a copy of documents addressing plaintiff's medical transfers from 2014 through 2017, and provide a declaration to the court attesting to such production.
>
> 2. Within thirty days, in response to Request Nos. 9 and 19, defendant shall provide plaintiff with a copy of any RFS [Referral for Services"] or orders pertaining to plaintiff's GI specialty appointment from November 1, 2016, through December 31, 2016, including any orders that were cancelled, modified or voided, and file a declaration attesting to such production. If counsel for defendant does not have such medical records in her current physical possession, counsel for defendant shall make a good faith effort to locate such records from plaintiff's electronic medical file as well as any hard copy physical file at both CSP-Solano and Old Folsom State Prison. If counsel for defendant is unable to locate such documents, she shall file a declaration setting forth her efforts to locate such documents.
>
> 3. Within thirty days, in response to Request No. 13, defendant is directed to file a declaration advising whether or not any documents have, to date, been received and, if so, what date they were produced to plaintiff.
>
> 4. Further, counsel for defendant shall work with the litigation coordinator and medical records supervisor, Mr. Weeks, at CSP-Solano, to provide plaintiff with meaningful access to his medical file, both on the computer and in hard copy format, along with a contemporaneous ability to obtain copies of pertinent documents, including those marked cancelled, voided, or modified, particularly in response to Request Nos. 9, 15, 16, 17, and 18. Meaningful access includes an ability to review the medical records and determine which record he needs to copy, as well as sufficient time to review and copy such records.

---

[2] On February 10, 2020, plaintiff filed a document entitled "Further Response to Defendant's Sur-reply." (ECF No. 90.) However, such filing was not authorized and is disregarded.

(ECF No. 66 at 17-18.) On August 29, 2019, defendant filed a response, noting counsel contacted both defendant and the litigation coordinator, who contacted Mr. Weeks, Health Records Technician II Supervisor at California State Prison, Solano ("CSP-Solano"), who copied all of plaintiff's medical records from October 28, 2008, through July 31, 2019, consisting of plaintiff's medical file maintained in paper format, stored electronically, and maintained on the Cerner computer system. (ECF No. 71 at 2.) Plaintiff was provided two banker's boxes of such medical records on August 14, 2019, "in the manner in which they are maintained by the medical department." (Id.)

On September 30, 2019, plaintiff filed a motion for the court to order defendant to comply with the August 1, 2019 order, complaining that defendant's response did not comply with the court's August 1, 2019 order, and arguing that there are documents in his medical file that were deleted, modified, or altered. (ECF No. 76.) Plaintiff states he filed a request for the missing documents, but that Mr. Weeks responded that "all records were printed. If you did not receive a document, it is not in your medical record." (ECF No. 76 at 3.) Plaintiff claims "this is a systemic problem through CDCR ["California Department of Corrections and Rehabilitation"] custody staff as well as medical staff," and argues the missing health care transfer information form would include "pending medical/mental health appointments." (ECF No. 76 at 3.) Plaintiff objects that there was no RFS for the GI specialty appointment signed for on December 12, 2016, and no RFS within the prior 90 days of December 12, 2016, for GI specialty in any of the 6,176 pages produced. Plaintiff argues such evidence is important to show defendant cancelled plaintiff's already approved and scheduled GI specialty appointment. (ECF No. 76 at 5.) Plaintiff argues that medical records staff refuse to print modified, canceled, or voided documents, and refuse to allow inmates to access the computer bearing medical records. Plaintiff provides examples that he claims confirm that his medical records have been altered. (ECF No. 76 at 6, San Joaquin General Hospital on July 30, 2017 for barium enema);[3] ECF No. 76 at 8

---

[3] Plaintiff contends that during the study, the tech discovered a "problem," and retrieved a radiologist who reviewed the screen, along with the tech, two correctional officers and plaintiff. (ECF No. 76 at 6.) Plaintiff claims the radiologist pointed out a blockage/problem in plaintiff's upper left side of plaintiff's abdomen, which plaintiff confirmed with the radiologist, in front of

1  (August 19, 2019 San Joaquin General Hospital, ER visit).[4])

2  Plaintiff seeks further responses to the court's August 1, 2019 order paragraphs 1, 2 and 4, and asks the court to order a person from the information technology department knowledgeable about the CERNER computer system to assist plaintiff in obtaining the cancelled, voided, or modified documents plaintiff needs, based on Mr. Weeks telling plaintiff that Weeks cannot copy cancelled, voided or modified documents. (ECF No. 76 at 10.)

Further, plaintiff now claims that some of the medical transfer documents would have to be obtained through custody rather than medical. (ECF No. 76 at 9.) Plaintiff complains defendant failed to provide plaintiff with all records involving transfers from 2014 to 2017.

In addition, plaintiff asked the court to reconsider the order denying plaintiff's request for documents from the "huddle," based on newly-discovered documents that prove the "huddle" exists (citing his Ex. M), and now seeks an order requiring defendant to produce all documents and minutes of huddles regarding plaintiff. (ECF No. 76 at 11.)

On October 24, 2019, defendant filed an opposition confirming that after plaintiff again complained that documents were missing, defense counsel contacted Mr. Weeks to determine if there were any additional documents. (ECF No. 77.) Mr. Weeks confirmed that all of plaintiff's medical records had been produced, over 6,000 pages, and provided a screenshot of the filters used when printing the medical records. The filters were set to include "all inactive orders, such as discontinued, canceled, or voided orders." (ECF No. 77 at 2, 4.) In addition, counsel notes that defendant advised plaintiff that documents entered into the computer system cannot be changed. (ECF No. 77 at 2, 9.) Under oath, defendant stated: "generally, if a medical record is

---

the witnesses. Plaintiff alleges that despite the radiologist confirming "it will all be in the report," the report returned "normal." (Id.)

[4] Plaintiff claims that during the ER visit, Dr. Willett informed plaintiff that she would be "putting a request for the post op-complications of the Belsey Mark IV to be checked out soon in the discharge instructions for plaintiff." (ECF No. 76 at 8.) Prior to plaintiff's discharge, plaintiff claims that Dr. Willett came by to advise she was leaving, and that Dr. Kim would discharge plaintiff, but that Dr. Willett had "put a request in your discharge instructions for you to be checked out for the Belsey Mark IV complications." (Id.) However, upon discharge, no such notation was included in the release orders. (Id.)

4

altered there is an addendum to the record, or a strike out with the initials of the person who changed the record. Once the record is scanned into the system it cannot be altered." (ECF No. 77 at 9.) Because defendant provided all of plaintiff's medical records from October 28, 2008, through July 31, 2019, defendant contends there are no other documents in the computer system to produce. (ECF No. 77 at 2.)

On November 12, 2019, plaintiff filed his response reiterating his position that defendant provided "edited" medical records, and failed to provide documents pertaining to the December 12, 2016 incident. (ECF No. 81 at 1-2.) Plaintiff objects that the screenshot provided does not show any reference to what was used to print out plaintiff's records. Plaintiff contends that not only have his medical records been edited, but the transfers of 11-7-16 and 11-28-16, as well as the print and sign form from the RN Rouso visit of 12-12-16 were not included in the medical records provided to plaintiff. (ECF No. 81 at 3.) Plaintiff also objects that there was a "modified" screen on the December 12, 2016 RN Rouso visit" that RN Lahey showed plaintiff sometime in late 2018 or early 2019. (ECF No. 81 at 3-4, modified by ECF No. 86 at 1.) Plaintiff states that Lahey clicked on "Face to Face" then clicked on "Modified," and then a block popped up with Mr. Weeks' name on it preventing Lahey from going past the screen. (ECF No. 81 at 4.) Plaintiff also contends Mr. Weeks attempted to rewrite the court's order allowing the defendant to provide plaintiff access to the computer OR provide copies of medical records (ECF No. 81 at 17), and suggesting plaintiff is looking for modified orders rather than modified medical documents. (ECF No. 81 at 5.) This was done despite the court's order stating production was to be done "both on the computer and in hard copy format," and "with a contemporaneous ability to obtain copies of pertinent documents, including those marked cancelled, voided or modified." (ECF No. 81 at 5.) Plaintiff contends Mr. Weeks attempted to mislead plaintiff's claims of "modified documents/ medical records" as meaning "modified orders." (ECF No. 81 at 4, 5.) Plaintiff further argues that the records plaintiff is looking for are medical records that do not appear in plaintiff's medical record because plaintiff's medical record has been modified so that they don't appear -- they are in the computer under what has been modified. (ECF No. 81 at 5.)

On December 12, 2019, the court ordered defendant to file a sur-reply to plaintiff's

5

November 12, 2019 reply, including, but not limited to, a declaration responding to the August 1, 2019 order (by counsel or Mr. Weeks), as well as a declaration by Mr. Weeks specifically addressing: (1) the compilation of the records provided plaintiff; (2) any efforts to locate all of plaintiff's physical medical records; (3) all of the concerns set forth in the August 1, 2019 order and instant order, including, but not limited to, whether Mr. Weeks located any RFS or orders pertaining to plaintiff's GI specialty appointment from November 1, 2016, through December 31, 2016; (4) whether plaintiff's medical records from 2016 were scanned into the computer or created in the computer; and (5) whether or not medical records can be modified, edited or altered in the Cerner computer system and if so, how such modifications can be tracked for future reference. (ECF No. 84.)

On January 6, 2020, plaintiff filed a motion for clarification of the court's December 12, 2019 order. (ECF No. 86.) Plaintiff clarifies that he saw the "modified" screen on the December 12, 2016 RN Rouso visit when plaintiff was shown the screen by RN Lahey in late 2018 or early 2019, when RN Lahey attempted to assist plaintiff in locating the records for the GI specialty appointment. Plaintiff reiterates that RN Rouso printed out the record on December 12, 2016, and plaintiff signed it, and then had Correctional Officer Stiltner witness it. Plaintiff claims the records were there in the spring of 2017, but that Mr. Weeks told plaintiff he would have to go through the proper channels to get them. (ECF No. 86 at 2.) Plaintiff contends that both Rouso and Stiltner are unavailable to serve as witnesses, and objects that the RFS documents and Health Care Transfer forms related to this specialty appointment are also missing. (ECF No. 86 at 2, 3.)

III. Current Briefing

Defendant's Sur-reply

Counsel for defendant provided her own declaration, and the declaration of Mr. Weeks, as well as detailed information concerning the CDCR's recordkeeping procedures and implementation of an electronic records system through Cerner. (ECF No. 88.) On August 23, 2016, CSP-Solano transitioned to Cerner electronic health records system, and CSP-Folsom transitioned to Cerner before CSP-Solano. (ECF No. 88 at 3, 10, 17.) Defendant explained that if a mistake is made in an electronic medical record, it is marked "In Error," which appears at the

6

top of the record, and then a new record with the new information must be created. (ECF No. 88 at 4.) Both documents remain in the electronic medical record. On the other hand, paper documents scanned into Cerner can only be slightly modified; using the modify feature that existed at that time, only the document type, the encounter date and time, and the box number could be changed. (ECF No. 88 at 3, 10.) The program does not allow changes or modifications to substantive information. (ECF No. 88 at 3, 10.)

Defendant contends that no electronically stored document can be deleted or destroyed. (ECF No. 88 at 4.) "CDCR has set the privilege on medical documents so that no medical personnel within the prison system can change, alter, delete, destroy or modify a medical record that has been inputted into the Cerner system." (ECF No. 88 at 16.) Because any RFS documents created between November 1 and December 31, 2016, would have been created electronically, any such document could not have been altered, modified, or changed, and it could not have been destroyed or deleted. (ECF No. 88 at 3-4.)

Defendant confirmed that Mr. Weeks has made several attempts to locate all RFS documents in plaintiff's medical file created between November 1 and December 31, 2016, but no RFS for a 2016 GI specialty appointment has been located. "According to the Cerner system, [plaintiff] has been requesting documents for the late 2016 time period since July 2017, and has been given all of the documents that are in his health care file for that time frame." (ECF No. 88 at 4.) Mr. Weeks did locate an RFS for GI evaluation and treatment dated December 13, 2016, but plaintiff has seen such RFS and claims it is not the documents he seeks.[5] (ECF No. 88 at 4, 11.)

Defendant explained that the complete copy of plaintiff's medical records was printed from Cerner, and the "use of the Confidential Master Report template in the Report Request

---

[5] In the institution level response to plaintiff's appeal SOL HC 18001020, in which plaintiff was attempting to obtain copies of December 12, 2016 medical records, Dr. Largoza stated that "P. Tello reviewed plaintiff's medical chart and there is an RFS for a referral to gastroenterology; however, it was denied due to not being a medical necessity. Additionally, P. Tello explained to you that CSP-Solano had recently 'gone live" with Cerner at that time, our new electronic medical record, and that RN Russo could have been mistaken when he saw the 'approved RFS.'" (ECF No. 59 at 62.)

7

application allowed for all of Harris' healthcare documentation to be printed, including all confidential documents." (ECF No. 88 at 4, 9.) Plaintiff received his entire medical file for an eleven-year time frame, including paper format medical records scanned into the system.

In addition to Mr. Weeks' efforts, counsel for defendant: (1) reviewed a disc of plaintiff's medical records; (2) contacted IT for California Correctional Health Care Services ("CCHCS") to determine whether the document could have been deleted, and was informed that Cerner does not allow documents to be deleted; (3) contacted CSP-Folsom's medical records department to see if they could locate any miscellaneous documents for plaintiff, but none were located; (4) went to the Health Records Center in Rancho Cordova and reviewed plaintiff's entire paper medical file to determine whether the RFS was misfiled, but no such responsive document was located; and (5) discussed with Mamie Hao, Cerner, and Debra Castor, CCHCS, how the Cerner computer system operates, and was advised that "documents that are created electronically by medical personnel cannot be altered, modified, changed, deleted, or destroyed." (ECF No. 88 at 5, 16-17.)

Finally, Mr. Weeks declares that he has met with plaintiff "a few times for grievance interviews," and plaintiff asks for the same documents, but Mr. Weeks "explained to [plaintiff] several times that the requested documents are not in his medical file." (ECF No. 88 at 11.)

Plaintiff's Response

Plaintiff reiterates, *inter alia*, his claim that RN Rouso informed plaintiff on December 12, 2016, that plaintiff had an upcoming scheduled and approved GI specialty appointment, printed out documents and told plaintiff that if he wanted to keep the appointment, you need to sign here, but would not permit plaintiff to read the other pages because it showed the location, date and time of the appointment. (ECF No. 89 at 2.) Plaintiff insisted on having Correctional Officer Stiltner read the papers, and Stiltner confirmed the document set forth the GI specialty appointment information. (ECF No. 89 at 3.) Stiltner assured plaintiff the papers were not a refusal of the appointment. Plaintiff now explains that the RFS in question could be as far back as September 10, 2016, and the appointment date could be from December 11, 20116 through March 15, 2017.

Also, plaintiff now claims that during a January 2, 2020 medical appeals hearing, Mr.

Weeks informed plaintiff that the 2016 record RN Rouso printed out on December 12, 2016, was most likely kept by the nursing staff; that there are medical records not kept by Mr. Weeks or the medical records department regarding plaintiff's medical care. (ECF No. 89 at 4.) Mr. Weeks suggested plaintiff put in a request form to the nursing supervisor to obtain the 2016 record, which plaintiff did, but he has not heard back.

IV. Request for Reconsideration re Missing Documents

Review of this record reflects that both defense counsel and Mr. Weeks have performed exhaustive searches for the documents plaintiff contends exist, but without success. Their declarations confirm that the substance of paper records scanned into Cerner cannot be modified, and that electronically stored documents cannot be destroyed or deleted. Mr. Weeks further declares that:

> The use of the Confidential Master Report template in the Report Request application allows for printing of all healthcare documentation, including all confidential documents (e.g., communicable disease, mental health). All orders, regardless of status, print when this template is used. *No documents within inmate Harris' Health Records were filtered out when I used this system*.

(ECF No. 88 at 9 (emphasis added).)

Plaintiff now attempts to expand the time frame for the search for such documents from September 10, 2016, through March 15, 2017. However, because CSP-Solano transitioned to electronic record-keeping on August 23, 2016, the expansion of the search would not alter the outcome. Plaintiff was provided a copy of all medical records contained in the Cerner system at CSP-Solano, and searches by Mr. Weeks and defense counsel, as well as others at counsel's request, failed to turn up the RFS from 2016 that plaintiff seeks.

In addition, plaintiff now contends that nurses may keep medical records separate from plaintiff's medical records. Such contention is not plausible given state laws and other regulations governing the retention of health care records. California law requires retention of certain medical records. See 42 C.F.R. § 438.3(u). For example, hospitals are required to keep patient records for a minimum of seven years following discharge. Cal. Code Regs. tit. 22, § 70751. In addition, the CDCR is required to "[r]etain patient health information for ten years

after discharge from CDCR." Cal. Code Regs. tit. 15, § 3999.216(a)(3).

Moreover, "[i]n the response to interrogatory no. 9,[6] defendant stated, under oath, that "generally, if a medical record is altered there is an addendum to the record, or a strike out with the initials of the person who changed the record. Once the record is scanned into the system it cannot be altered." (ECF No. 70 at 9-10.) In addition, in response to interrogatory nos. 21 and 22, defendant Kuersten stated that he has no knowledge of the December 12 and 13, 2016 incidents at A yard medical involving Correctional Officer Stiltner allegedly reading plaintiff's gastroenterologist specialty appointment where plaintiff alleges Correctional Officer Stiltner witnessed and read plaintiff's gastroenterologist specialty appointment on December 12, 2016. (ECF No. 70 at 14, 15.)

Plaintiff has been provided with copies of his entire medical file covering a period of 11 years. Despite exhaustive searches, the 2016 medical records plaintiff seeks have not been located. Defendant cannot be required to produce a document that cannot be found. Accordingly, plaintiff's request for further production of his medical records is denied.

V. Request for Reconsideration re Huddles

Plaintiff's request for reconsideration (ECF No. 76) is untimely. The court issued its order on August 1, 2019, and plaintiff did not file his request for reconsideration of the order denying further production concerning huddles until September 30, 2019. In addition, plaintiff was already granted reconsideration on August 26, 2019, but the court found plaintiff failed to demonstrate relevance to the sole claims remaining in this action. (ECF No. 69 at 2.)

Moreover, the request at issue asked for "all documents, rules and procedures describing the functions of the daily medical "Huddle," and defendant responded that there are no documents responsive to this request. (ECF No. 66 at 11.) Importantly, the fact that the huddle was

---

[6] Interrogatory No. 9 asked defendant "who altered the medical record of RN visit of inmate Harris of 12-12-16 so it would not show existence and discussion of approved and scheduled upcoming Gastroenterologist specialty appointment that RN Rouso discussed with inmate Harris on 12-12-16?" (ECF No. 70 at 9.) Defendant objects on the grounds that the question assumes facts not established as true, specifically, that plaintiff's medical records have been altered, and calls for speculation. Without waiving such objections, defendant responded that he did not know.

mentioned in plaintiff's medical records does not confirm that written records from such huddles are created or maintained; rather, the medical records confirm that the huddle is a verbal exchange: "confirm what was *said*," and plaintiff's case "was *discussed*." (ECF No. 76 at 74-75.) Plaintiff speculates that "documents" or "minutes" from such huddles exist. As previously noted, defendant cannot be required to produce documents that do not exist.

For all of these reasons, plaintiff's request for reconsideration of the court's order concerning "huddles" (ECF No. 76) is denied.

VI. Request for Reconsideration re Transfer Orders

Plaintiff objects that defendant has not provided plaintiff with records involving his transfers from 2014 through 2017. Plaintiff now claims that some of the medical transfer documents would have to be obtained through custody rather than medical. (ECF No. 76 at 9.) Defendant was previously ordered to provide plaintiff with a copy of documents addressing plaintiff's medical transfers from 2014 through 2017, and such records, if any, were included in the medical file plaintiff was provided. Moreover, defendant provided plaintiff with the health care services transfer procedures, and the court found that plaintiff failed to demonstrate how his transfers, no matter the type, are relevant to his deliberate indifference claims against defendant, a medical doctor. (ECF No. 66 at 10.) As a medical doctor, defendant is not custody staff, and has no input in determining whether an inmate is transferred for "institutional needs;" in any event, defendant is being sued based on his alleged failure to provide adequate medical care. (ECF No. 66 at 10.) Because such rulings issued on August 1, 2019, plaintiff's September 30, 2019 request for reconsideration of such orders is untimely. Finally, plaintiff's initial discovery request did not seek transfer documents from custody staff; defendant cannot be ordered to provide documents plaintiff did not initially request.

Plaintiff's request to order further production of transfer records (ECF No. 76) is denied.

VII. Further Scheduling

The undersigned first issued its discovery and scheduling order on November 1, 2018. (ECF No. 50.) On July 29, 2019, the undersigned noted that the discovery deadline had been extended once, to May 23, 2019, at plaintiff's request, and granted plaintiff an additional

extension "solely for the purpose of resolving plaintiff's motion to compel discovery (ECF No. 63)." (ECF No. 65.) The court ruled on plaintiff's motion (ECF No. 66), and subsequently ordered defendant to provide additional briefing on plaintiff's motion to compel further production (ECF No. 76). (ECF No. 84.) Plaintiff has been provided multiple opportunities to challenge the production in response thereto. The instant order resolves plaintiff's motions to compel. Discovery is now closed.

Good cause appearing, the court reschedules the pretrial motions deadline for March 26, 2021. Such motions shall be briefed in accordance with paragraph 8 of this court's order filed January 10, 2018.

VIII. Conclusion

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's requests for further production of documents (ECF Nos. 76, 86) in response to his motion to compel (ECF No. 59), and requests for reconsideration (ECF No. 76) are denied.

2. Discovery is closed.

3. All pretrial motions, except motions to compel discovery, shall be filed on or before August 21, 2020. Motions shall be briefed in accordance with paragraph 8 of this court's order filed January 10, 2018.

Dated: October 7, 2020

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/harr0680.rec.mtc